**\*\*NOT FOR PUBLICATION\*\***

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAGDIEL C., | Civil Action No. 20-11870 (CCC) |
| Petitioner, | **OPINION** |
| v. | |
| JOHN TSOUKARIS, et al., | |
| Respondents. | |

**CECCHI,** District Judge:

Presently before the Court are Petitioner Magdiel C.'s ("Petitioner") motions (ECF Nos. 2, 17) seeking a temporary restraining order in relation to Petitioner's amended habeas petition. ECF No. 16. Following an order to answer, the Government filed responses to the motions and amended petition (ECF Nos. 20, 26), to which Petitioner has replied (ECF Nos. 23–25). For the reasons set forth below, and this Court having determined that oral argument is not warranted in this matter pursuant to Rule 78 of the Federal Rules of Civil Procedure, Petitioner's motions seeking a temporary restraining order are denied without prejudice.

**I. BACKGROUND**

Petitioner is a native and citizen of Honduras. ECF No. 20-11. According to Petitioner, he "first came to the United States in approximately 2001."[1] ECF No. 16-3 at 2. Between 2001 and 2010, Petitioner was arrested for, and ultimately convicted of, multiple criminal offenses including drug possession, assault, obstruction, and hindering charges. Id. at 2–3; ECF No. 20-11

---

[1] According to the Government, Petitioner previously attempted to illegally enter the United States in September 1999, but agreed to voluntary removal at that time. See ECF No. 20 at 3.

1

at 2–3. In October of 2008, Petitioner was taken into immigration custody. ECF No. 20-11 at 3. He was ordered removed in November 2008, and ultimately removed to Honduras in December 2008. Id. Petitioner illegally re-entered the United States, but was taken back into immigration custody on July 29, 2010, and ultimately removed pursuant to his reinstated 2008 removal order in September 2010. Id. Following his 2010 removal, Petitioner became subject to a homicide related warrant in his home country which apparently arose out of a fatal traffic accident in 2012, but Petitioner asserts that he was not aware of those charges until after he filed his initial petition in this matter in 2020. ECF No. 16-3 at 3–4.

In any event, Petitioner once again illegally re-entered the United States, and was arrested on driving under the influence charges on March 11, 2020. ECF No. 20-11 at 4. The following day, Petitioner was taken back into immigration custody (*see id.* at 3) and his 2008 final order of removal was once again reinstated on March 16, 2020. Petitioner has remained detained in the Essex County Correctional Facility ("ECCF") since that time. Because Petitioner is subject to a reinstated order of removal, he is so detained pursuant to 8 U.S.C. § 1231(a). *See, e.g., Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208 (3d Cir. 2018). In the fall of 2020, Petitioner sought release on bond pursuant to the Third Circuit's ruling in *Guerrero-Sanchez*, but an immigration judge denied his release on October 6, 2020, finding him to be both a flight risk and danger to the community in light of his pending homicide warrant in Honduras and his criminal history. ECF No. 20-14.

During his detention at ECCF, Petitioner has sought and received treatment for a number of health issues including asthma, nasal congestion, sore throat, chest pain, intestinal issues, dental issues, ear pain, acid reflux, and back pain. ECF No. 18 at 5–72. In each instance, Petitioner was seen by medical personnel and provided medication as needed to treat his pain and other

symptoms. Id.  Petitioner's asthma, specifically, was regularly monitored and he was provided medication which was adjusted as necessary during his detention. Id.  Petitioner also received a COVID-19 test in May 2020 which was negative. Id. at 27-28.  Petitioner's medical records thus indicate that he received treatment and regular monitoring for each of the medical issues he raised to the attention of the ECCF's medical staff.

In support of his habeas petition and motions seeking a restraining order, Petitioner has submitted the report of his proposed medical expert, Dr. Christian Merlo, M.D., M.P.H.  ECF No. 16-1.  Dr. Merlo opines that Petitioner "has two primary risk factors for severe COVID-19 symptoms: he is obese and he has a history of asthma." Id. at 4.  Considered together, Dr. Merlo estimates that Petitioner is at "4.5x" the risk of severe complications requiring hospitalization as someone who does not have those conditions, and that Petitioner is therefore at "high risk for severe complications or even death if he were to contract COVID-19." Id. at 15.

## II. DISCUSSION

### A. Legal Standard

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Novartis Consumer Health v. Johnson & Johnson – Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (citation and quotation marks omitted).  In order to establish that he is entitled to injunctive relief in the form of a temporary restraining order,[2] Petitioner must

---

[2] The Third Circuit has recently reiterated that the relief available via a temporary restraining order is "ordinarily [limited to] temporarily preserving the status quo," and that injunctive relief going beyond maintaining the status quo, such as the outright release of a detained alien, must instead normally be obtained through a motion seeking a preliminary injunction. *Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 160–62 (3d Cir. 2020).  The standard that applies to the grant of a temporary restraining order is essentially identical to that which is applied when a party seeks a preliminary injunction, other than the requirement that a preliminary injunction can only be issued after an adversary has been provided notice and an opportunity to be heard.  This Court's reasoning would thus be equally applicable to the extent that Petitioner's motion is in effect, if not in name,

> demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants; and (4) granting the injunction is in the public interest." *Maldonado v. Houston*, 157 F.3d 179, 184 (3d Cir. 1998) (as to a preliminary injunction); *see also Ballas v. Tedesco*, 41 F. Supp. 2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A plaintiff must establish that all four factors favor preliminary relief. *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187 (3d Cir. 1990).

*Ward v. Aviles*, No. 11-6252, 2012 WL 2341499, at *1 (D.N.J. June 18, 2012). Petitioner, as the party seeking a temporary restraining order, must first demonstrate a "reasonable probability of eventual success in the litigation." *Bennington Foods, LLC v. St. Croix Renaissance Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citation and quotation marks omitted). To satisfy this requirement, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." *Ward*, 2012 WL 2341499 at *2 (quoting *Oburn v. Sapp*, 521 F.2d 142, 148 (3d Cir. 1975)).

**B. Analysis**

In his motion, Petitioner argues that he should be released from immigration detention because he has a high likelihood of success on his conditions of confinement claims – specifically his claims that he has been subjected to punitive conditions of confinement without a supporting conviction and that ECCF and its staff have inadequately responded to his medical needs in light of his medical history and the threat of COVID-19.

---

a motion seeking a preliminary injunction. *See Wincup Holdings, Inc. v. Hernandez*, No. 04-1330, 2004 WL 953400, at *2 (E.D. Pa. 2004) ("The standard for determining the applicability of a temporary restraining order is identical to the test for determining the applicability of a preliminary injunction"); *see also Ward*, 2012 WL 2341499 at *1.

The Third Circuit recently reiterated the standards applicable to such claims in its decision in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020). As the Third Circuit explained, in evaluating whether an alien's conditions of confinement amount to undue punishment, "[t]he touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish." *Id.* at 325–27. In the absence of a showing that the detention facility's staff acted with an express intent to punish the petitioner, determining whether conditions amount to unconstitutional punishment requires that the district court "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Id.* In reviewing the conditions and actions of detention officials and their relation to the Government's legitimate interest in detaining aliens pending the conclusion of removal proceedings, reviewing courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.*

Given the Government's strong interest in detaining aliens subject to removal proceedings and the deference due to the expertise of detention officials, the Third Circuit in *Hope* rejected the argument that detention during the COVID-19 pandemic would amount to unconstitutional punishment where the Government had taken concrete steps aimed at mitigating the threat posed to detainees, notwithstanding serious pre-existing health conditions which may predispose those detainees to serious complications should they contract the virus. *Id.* 327-29.

Turning to deliberate indifference medical claims, the Third Circuit reaffirmed that "[t]o establish deliberate indifference, [the petitioner] must show the Government knew of and

5

disregarded an excessive risk to their health and safety." *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000). The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as "rules of due process are not subject to mechanical application in unfamiliar territory." *Id.* at 329–30 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where the Government has taken concrete steps towards ameliorating the medical effects of COVID-19 on a detention facility, a detainee will fall "well short of establishing that the Government was deliberately indifferent toward [his] medical needs" in light of the virus even though the Government cannot entirely "eliminate all risk" of contracting COVID, notwithstanding even serious pre-existing medical conditions which may exacerbate a COVID-19 infection should one occur. *Id.* at 330–31.

In this matter, it is clear in light of *Hope* that the Government has a clear and legitimate interest in detaining Petitioner, an alien who is both subject to a reinstated order of removal following his illegal re-entry into this country and has previously been found to be a danger to the community and flight risk by an immigration judge. To show a likelihood of success on the merits of his punitive conditions claim, Petitioner must therefore show either that ECCF and its staff acted with an express intent to punish him or that his conditions of confinement are arbitrary, purposeless, or excessive and therefore unreasonable in light of that interest. *Hope*, 972 F.3d at 325-29; *see also Stevenson v. Carroll*, 495 F.3d 62, 67–68 (3d Cir. 2007); *Daniel R.-S. v. Anderson*, No. 20-3175, 2020 WL 2301445, at \*5–7 (D.N.J. May 8, 2020). As Petitioner has not alleged an express intent to punish him on the part of Respondents, he must therefore present facts indicating

6

that his current conditions are arbitrary, purposeless or excessive in light of the strong interest in his detention.

Having reviewed the actions taken by ECCF to mitigate and alleviate the threat posed to its detainees by COVID-19, this Court finds that Petitioner has failed to show that his conditions of confinement are arbitrary, purposeless, excessive, or unreasonable. This Court so concludes as ECCF has taken considerable and substantial steps to mitigate the virus's impact upon its detainee population. Such steps include operating each immigration detainee pod below capacity, providing space for detainees to remain six feet apart as often as possible, encouraging social distancing, intake health and temperature screenings for all incoming detainees, having nurses on-site and doctors on-site or on-call twenty-four hours a day, twice daily unit visits by nursing staff to provide detainees with an opportunity to raise health concerns, limiting the entrance of outside vendors and volunteers into ECCF, daily monitoring of at-risk detainees, increased cleaning and sanitization, health screenings of all staff and other non-detainees entering ECCF, the provision of protective equipment to staff and masks to detainees, and wide-spread COVID antibody testing of all detainees. ECF No. 26 at 2–13, 19. ECCF has also adopted treatment protocols under which those who show symptoms of the virus are either treated in-house or at a local hospital as needed and are quarantined, while those who are asymptomatic but have been exposed to an infected individual are cohorted in a separate unit for fourteen days. Id. at 13–15. In response to positive COVID tests in December 2020, ECCF immediately tested the remaining detainees in the units in which the positive tests were found, and placed those units in quarantine for fourteen days with twice daily monitoring of all detainees in those units. Id. at 20–22. ECCF also adopted a rule requiring "regular facility-wide COVID-19 testing for anyone who works in the facility . . . including vendors" resulting in all employees of ECCF getting tested "every two weeks through

7

February 2021." *Id.* at 20–21. Considered in their entirety, these concrete actions taken to mitigate the threat of COVID-19 and treat those infected with the virus clearly indicate that the conditions under which Petitioner is detained are not arbitrary, excessive, or purposeless in light of *Hope*, but are instead rationally related to the Government's interest in detaining the Petitioner. Petitioner has therefore failed to show that he is likely to succeed on the merits of his conditions of confinement claim. *Hope*, 972 F.3d at 325-29; *Daniel R.S.*, 2020 WL 2301445 at *7.

In light of the medical treatment and monitoring Petitioner has received while detained, including the management of his asthma medication, as well as the COVID-19 protocols outlined above, Petitioner has likewise failed to show a reasonable likelihood of success on the merits to the extent he claims that ECCF has been deliberately indifferent to his medical needs. Although this Court accepts that the COVID-19 pandemic poses risks, and that Petitioner does, at the very least, have ongoing health needs including asthma and obesity, nothing Petitioner has provided indicates that ECCF and its staff have been deliberately indifferent to those medical issues. Instead, the record indicates that ECCF has been attentive to Petitioner's needs and has regularly monitored his more severe issues, including his recurrent asthma. Combined with the numerous actions aimed at alleviating the threat of COVID-19 discussed above, Petitioner has failed to present facts showing deliberate indifference on the part of ECCF or its medical staff, and it therefore does not appear that Petitioner will be able to show that ECCF recklessly disregarded Petitioner's health or the risks posed by COVID-19. Petitioner has therefore failed to show a likelihood of success on the merits to the extent he asserts that ECCF has been indifferent to his medical needs. *Hope*, 972 F.3d at 330-31; *Daniel R.S.*, 2020 WL 2301445 at *7. As Petitioner has failed to show a likelihood of success on the merits as to his claims, he is not entitled to preliminary

injunctive relief at this time and his motion seeking a temporary restraining order is therefore denied.[3] *Ward*, 2012 WL 2341499 at *1.

## III. CONCLUSION

For the reasons expressed above, Petitioner's motions seeking a temporary restraining order (ECF No. 2, 17) are **DENIED WITHOUT PREJUDICE**. An appropriate Order accompanies this Opinion.

**DATE**: March 9, 2021

s/ Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**

---

[3] As Petitioner has failed to meet his burden with respect to the likelihood of success on the merits, the Court need not address the remaining factors. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *Tate v. Schember*, 809 F. App'x 64, 65–66 (3d Cir. 2020) ("[W]e will affirm because we agree that [plaintiff] has not shown a likelihood of success on the merits for the reasons that the District Court thoroughly explained."); *431 E. Palisade Ave. Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 279 (3d Cir. 2020) (reversing grant of preliminary injunction because plaintiff "has not shown a likelihood of success on the merits"); *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("Thus, a failure by the moving party to satisfy these prerequisites: that is, a failure to show a likelihood of success or a failure to demonstrate irreparable injury, must necessarily result in the denial of a preliminary injunction."); *see also Emerson O. C.-S. v. Anderson*, No. 20-3774, 2020 WL 1933992, at *7 (D.N.J. Apr. 22, 2020) (declining to address remaining preliminary injunction factors after determining that movant had not demonstrated a likelihood of success on the merits of his claim).